UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARBER BROS., INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION ) NO. 04-11459-RCL |
| JH TRADEMARK COMPANY, LLC, | ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A PRELIMINARY INJUNCTION**

### I.    PRELIMINARY STATEMENT

*"A felony conviction for being in possession of stolen property will make your business life very complicated."*

--LETTER FROM JH TRADEMARK COMPANY LLC, TO GARBER BROS, INC. CUSTOMERS, JUNE 2004.

It takes more than good fortune for a distribution business to survive and prosper for almost six decades. Relationships must be forged with customers, good will must be developed and carefully maintained, and confidential information must be guarded with special vigilance. Garber Bros., Inc. ("GBI") is a fifty seven year-old Stoughton company that distributes a variety of products to convenience stores up and down the Eastern seaboard of the United States. In June of 2003, GBI entered into an agreement with JH Trademark Company, LLC ("JHT") pursuant to which GBI would distribute one of JHT's products, Philipe's frozen pizzas, to its convenience store customers. JHT promised that it would maintain the confidentiality of all information regarding GBI customers that it obtained pursuant to the agreement. GBI would not have entered into the agreement if JHT had not so promised.

JHT, however, has breached its agreement to maintain the confidentiality of GBI's confidential customer information. Though it recently terminated the contract, JHT has not returned the confidential information it obtained while performing its agreement with GBI. JHT,

furthermore, is now impermissibly sharing GBI's confidential information and trade secrets with one of GBI's competitors, Dari Farms Ice Cream, Inc. ("Dari Farms"). JHT, finally, has resorted to groundless intimidation of those GBI customers that have not been willing to tolerate JHT's unorthodox business practices. In a letter sent from JHT to GBI customers in mid-June following the commencement of this suit, JHT threatened those customers with criminal prosecution with no justification whatsoever.

JHT is obligated to permit GBI to obtain the benefits for which it contracted and to cease the unfair and unlawful disclosure of GBI's confidential and proprietary information. GBI therefore asks that the Court grant its motion for a preliminary injunction and protect GBI from further irreparable harm that will result of JHT is permitted to continue its use, misuse, and misappropriation of GBI's confidential customer information.

## II.   FACTS

### A.   GBI's Agreement With JHT

GBI was founded as a candy and tobacco wholesaling company in 1947 by Harold and Paul Garber. Affidavit of Michael D'Ortenzio, Vice President of Marketing and Operations, Garber Bros., Inc., dated June 4, 2004 and submitted herewith ("D'Ortenzio Aff."), ¶ 2. In the past fifty-seven years, GBI has grown into one of the top wholesale distributors in the United States and has approximately 280 employees. *Id.*, ¶ 3. GBI distributes candy, beverages, frozen foods, dairy and deli items, convenience store supplies, food service equipment and other general merchandise to its convenience store customers along the Eastern seaboard from Maine to Virginia. *Id.*, ¶ 4. GBI's growth is owed in large part to the relationship and good will that GBI has worked to develop with its convenience store customers over an almost sixty year period. *Id.*, ¶ 5.

JHT is the management company for Philipe's French Bread Pizza. *Id.*, ¶ 6. At some point during the Spring of 2003, GBI and JHT began discussing an arrangement whereby GBI would distribute Philipe's branded products -- specifically, frozen pizzas -- to GBI convenience store customers. *Id.*, ¶ 7. As part of this arrangement, JHT also would supply GBI convenience

store customers with freezer equipment in which to store the frozen pizzas and microwave ovens in which to cook them. *Id.*, ¶ 8. On or about June 16, 2003, Bryan Botkin of JHT delivered to GBI the Letter of Agreement between JH Trademark And Garber Bros., Inc. (the "Letter Agreement"), which JHT drafted. *Id.*, ¶¶ 9-10, & Ex. A. In the letter, dated June 16, 2003 (the "June 16 Letter"), that accompanied the Letter Agreement, Mr. Botkin stated that he was "glad that we have finally been able to reach an agreement that is amenable to both of our companies and I look forward to a long and prosperous relationship." *Id.*, ¶ 11 & Ex. B. The June 16 Letter directed GBI to execute a copy of the Letter Agreement and return the same to JHT, at which point JHT would sign a copy of the agreement and return that signed copy to GBI. *Id.*, ¶ 12

The Letter Agreement contained several provisions that are critical to GBI's claims in this action. It stated:

- That it was to have a two year term beginning on July 1, 2003 and concluding on June 30, 2005. *Id.*, ¶ 13 & Ex. A.

- That both parties had the first right of renewal and could seek a future agreement within 60 days of the Letter Agreement's expiration. *Id.*

- That information regarding the Letter Agreement was confidential between the parties. *Id.*

- That "[d]iscussion of information with or regarding customers of Garber Bros., Inc. is strictly confidential." *Id.*

- That "[b]efore adding new distributors, [JHT] will offer [GBI] the opportunity to service the chain requesting the Philipe's Pizza program." *Id.*

Beginning in June 2003, in accordance with the Letter Agreement, GBI provided JHT with confidential information regarding GBI's convenience store customers. *Id.*, ¶ 14. After receiving this information, JHT began the process of placing freezer and microwave equipment at GBI convenience store customer locations, if GBI convenience store customers agreed to have the equipment placed at their locations and paid JHT a nominal deposit. *Id.*, ¶ 15. GBI, for its part, purchased Philipe's frozen pizzas from JHT at a price of $12.84 per case, and sold said cases to the GBI convenience store customers who had agreed with JHT to have the freezer and microwave oven equipment at their locations at a price of $15.06 per case. *Id.*, ¶ 16. GBI then

shipped the cases of Philipe's frozen pizzas to its convenience store customers who had agreed to purchase the same. *Id.*, ¶ 17.

## B. JHT's Breach of the Letter Agreement

In 2003 and 2004, in accordance with the Letter Agreement, GBI purchased tens of thousands of dollars worth of frozen pizzas from JHT in anticipation of delivering said frozen pizzas to GBI convenience store customers. *Id.*, ¶ 18. On March 15, 2004, however, Doug Hecker of JHT informed John Poulakis of GBI that (i) JHT was terminating the Letter Agreement with GBI and; (ii) beginning on March 29, 2004, Dari Farms would begin distributing JHT products, including Philipe's frozen pizzas, in Massachusetts, Connecticut and Rhode Island. *Id.*, ¶ 19, & Ex. C. Dari Farms distributes products and inventory to convenience stores in New England and is a competitor of GBI. *Id.*, ¶ 20.

In addition to its misappropriation of GBI's confidential information, which is discussed in greater detail below, JHT has breached its obligations under the Letter Agreement in several respects:

- It unilaterally terminated the Letter Agreement before the conclusion of its term.
- It did not offer GBI a "first right of renewal," as required by the Letter Agreement.
- It did not honor its obligation to "seek a future agreement within sixty days of the [Letter Agreement] expiring."
- It added one or more new distributors without offering GBI the opportunity to service customers enrolled in the Philipe's Pizza program, as required by paragraph 15 of the first page of the Letter Agreement.

Nobody at GBI had any expectation that JHT would refuse to adhere to its obligations to GBI under the Letter Agreement. *Id.*, ¶ 21. On no occasions before March 15, 2004 did JHT either state or imply that it was dissatisfied with GBI's performance under the Letter Agreement. *Id.*, ¶ 22.

JHT's breach of the Letter Agreement has harmed GBI in numerous respects. Dari Farms – not GBI – is currently distributing Philipe's frozen pizzas in Massachusetts, Connecticut and Rhode Island. *Id.*, ¶ 23. GBI, moreover, has demanded on numerous occasions since March

15, 2004 that JHT fully reimburse GBI for the cost that GBI incurred in purchasing the Philipe's frozen pizzas that were in GBI's warehouse on March 15, 2004 and had not been delivered to GBI convenience store customers. *Id.*, ¶ 24. JHT, however, has refused to refund to GBI the cost of the Philipe's frozen pizzas that GBI purchased from JHT and that GBI has been storing in its warehouse. *Id.*, ¶ 25.

### C. JHT's Misappropriation And Misuse Of GBI's Confidential Information

JHT has misappropriated confidential information that it obtained from GBI pursuant to the Letter Agreement. At all times during the negotiations between JHT and GBI, and at all other times material to this action, GBI specifically stated that all information related to GBI convenience store customers was confidential, proprietary and not to be disclosed to third parties under any circumstances. *Id.*, ¶ 26. To protect against the disclosure of this critical information, GBI requires all of its sales and sales management personnel sign noncompetition and nondisclosure agreements, pursuant to which GBI's sales and management personnel promise not to disclose any information related to GBI's convenience store customers. *Id.*, ¶ 27.

JHT, however, has misappropriated, and used for its own commercial gain, GBI's customer list, which, as the Letter Agreement explicitly states, "is strictly confidential." *Id.*, ¶ 28. Though it terminated the Letter Agreement in March, JHT has still not returned GBI's confidential customer information. *Id.* JHT's misappropriation of GBI's confidential information regarding GBI convenience store customers places at risk the good will and customer relationships that GBI has worked hard to develop over the last fifty seven years. *Id.*, ¶ 29.

Following GBI's commencement of this suit in state court, JHT began contacting GBI customers that had been unwilling to continue doing business with JHT after it breached its contract with GBI. *Id.*, ¶ 30. JHT sent letters to certain GBI customers that had not yet returned the freezers and microwave ovens that would be used to store and heat JHT's frozen pizzas. *See id.* Those letters, of which GBI continues to receive copies from unhappy customers, stated that JHT would:

> have our local Massachusetts legal counsel fill out a police report in which you will be identified as possessing stolen property. We have had thirty-five cases (out of ten thousand machines in operation) such as yours and our record of securing felony convictions against those people who do not return our equipment is 100%. **(We have a lovely picture book of those felons in our offices and I invite you to stop in and look at it if you are ever in Phoenix, AZ). A felony conviction for being in possession of stolen property will make your business life very complicated.**

*See id.* ex. D (emphasis added). JHT has refused to stop sending letters such as these to GBI customers. *Id.* GBI personnel have been forced to devote a substantial amount of time and effort attempting to repair relationships with customers that have received belligerent letters from JHT. *Id.*, ¶ 31. Under these circumstances, GBI is entitled to a preliminary injunction to protect its confidential information and the goodwill of its customers that it has worked diligently to develop over the years.

### III.   DISCUSSION

#### A.   Legal Standard

A preliminary injunction may be granted where the plaintiff establishes the following: (1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm that the opposing party would suffer if the injunction were granted; (3) that there is a likelihood that the plaintiff will succeed on the merits at trial; and (4) that the public interest will not be adversely affected if the injunction is granted. *See Camel Hair & Cashmere Inst. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986). The facts demonstrate that GBI likely will succeed on its claims, that the harm presently suffered by GBI through JHT's conduct is irreparable, and that the balance of the harms and public interest clearly favor the granting of an injunction.

#### B.   GBI Is Likely To Succeed On The Merits Because JHT Has Breached A Confidentiality Agreement And Misappropriated GBI's Trade Secrets.

##### 1.   JHT has breached the confidentiality provisions of the Letter Agreement and deprived GBI of the ability to receive the benefit of its bargain.

JHT had an obligation to maintain the confidentiality of information regarding GBI's customers, and, by virtue of its new endeavor with Dari Farms, JHT has breached this obligation.

As an initial matter, it bears noting that confidentiality provisions such as the one relied on by GBI in this case are valid and enforceable in Massachusetts. *See, e.g., New England Canteen Serv. v. Ashley*, 372 Mass. 671, 674 (1977) ("It is sufficient to state that the interests which may be protected [by non-compete agreements] have fallen into three generic categories: (1) trade secrets; (2) confidential data; and (3) goodwill.) (citations omitted).[1]

JHT promised in the Letter Agreement that that "[d]iscussion of information with or regarding customers of Garber Bros., Inc. is strictly confidential." D'Ortenzio Aff., ¶ 13. JHT has broken this promise. It has terminated the Letter Agreement with GBI and is now doing business with Dari Farms, but has not returned to GBI the confidential customer information that it obtained pursuant to the Letter Agreement. *Id.*, ¶ 26, 29. Both Dari Farms and JHT are deriving a substantial benefit from their use of the confidential customer information that JHT obtained from GBI in accordance with the terms of the Letter Agreement. This is a serious and substantial breach of JHT's contractual obligations to GBI. As such, GBI is likely to succeed on the merits of its breach of contract claim.

### 2. JHT has misappropriated GBI's trade secrets in contravention of Mass. Gen. Law ch. 93, § 42 & 42A.

Even absent a non-disclosure agreement, GBI's convenience store customer information constitutes protectible trade secrets, which trade secrets were misappropriated by JHT, and GBI is therefore likely to succeed on its claims for misappropriation of trade secrets. *See* Mass. Gen. Law ch. 93, § 42 ("Whoever embezzles, steals or unlawfully takes, carries away, conceals or copies . . . from any person or corporation, with intent to convert to his own use, any trade secret, regardless of value, shall be liable in tort to such person or corporation for all damages resulting therefrom."). "The essence of an action for the wrongful use of trade secrets is the breach of the

---

[1] The *New England Canteen* case involved the confidentiality provisions of an employment non-compete agreement, as do several of the cases cited herein. The principle endorsed in these cases – that a party promising to protect confidential business information of another ought to adhere to that promise – is particularly apt here.

duty not to disclose or to use without permission confidential information acquired from another." *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 165 (1979).

The customer information misappropriated by constitutes the type of confidential and protected information that provides GBI with an advantage over its competitors. As such, they are plainly trade secrets. *See J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass 728, 736 (1970) quoting *Restatement of Torts* § 757 ("A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," including "a list of customers"); *Affinity Partners, Inc. v. Drees*, Super. Ct. No. 95-2564, 1996 WL 1352635, at *10 (Jan. 6, 1996) (Cowin, J.) ("There is no meaningful distinction between 'trade secrets' and 'confidential information.'"). *See also Lowry Computer Prods., Inc., v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) (customer lists, profit margins, and pricing schemes are trade secrets); *Vanguard Trans. Sys., Inc. v. Edwards Transfer & Storage Co.*, 673 N.E.2d 182, 185 (Ohio Ct. App. 1996) (rates charged to carriers, drivers lists, and customer lists are trade secrets); *Tie Sys., Inc. v. Telcom Midwest, Inc.*, 560 N.E.2d 1080, 1084 (Ill. Ct. App. 1990) (compilation of "cut-over dates" when customers where scheduled to renew their contracts a trade secret). Beyond JHT's decision to use GBI's confidential customer information for its own benefit, JHT's use of GBI's confidential information to harm GBI's relationship with its own customers is also wrongful. *See Aronson v. Orlov*, 228 Mass. 1, 11 (1917) ("Even an owner of a patent cannot attack a business rival in bad faith *and by threatening letters seek to intimidate his customers and coerce that rival to yield to unjustifiable demands.*") (emphasis supplied). JHT's misappropriation and misuse of this confidential information is therefore unlawful and provides grounds for injunctive relief.

GBI took reasonable steps to preserve the secrecy of its confidential information. *USM Corp. v. Marson Fastener Corp.*, 379 Mass. 90, 101 (1979) (reasonable steps, not "heroic measures" all that are required for trade secret protection); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 340, 359 (D. Mass. 1993) (A plaintiff enforcing a trade secret must

take reasonable and proper steps to preserve its secrecy [but] [h]eroic measures ... are not required.). The types of express agreements entered into here GBI's employees restricting disclosure is generally recognized by Massachusetts courts as a significant factor in meeting this requirement. *See USM Corp.*, at 99 & n.8 (noting the importance of fact that plaintiff in trade secrets case had employees sign nondisclosure agreements); *Data Gen. Corp.*, 825 F. Supp. at 359 (D. Mass. 1993) (same). Here, the importance to GBI of protecting confidential customer information is quite clear. The significant nature of this information is confirmed by the fact that the Letter Agreement included confidentiality provisions covering customer information. *See* D'Ortenzio Aff., Ex. A. Similarly, GBI requires that its sales and sales management staff sign confidentiality agreements to protect GBI's customer agreement and good will. *See id.* at ¶ 27.

**C.    GBI Will Be Irreparably Harmed In The Absence Of Injunctive Relief.**

A continuation of JHT's breaches of the Letter Agreement with GBI, possibly undercutting or further undercutting GBI goodwill in the marketplace and with its customers, is itself "irreparable." *See Transkaryotic Therapies, Inc. v. Bain & Co., Inc.*, Super. Ct. Civ. Action No. 02-0747-BLS, 2002 WL 799694, *3 (March 5, 2002) ("[C]onfidential information, even if not truly a trade secret, and even if there is no ascertainable damage, is entitled to protection by injunction."). *See also Shipley Co., Inc. v. Clark*, 728 F. Supp. 818, 827 (D.Mass. 1990) ("[A]s to any unknown or future violations of the covenants by defendants, [plaintiff's] loss of 'goodwill' is irreparable."). Coupled with the harm to GBI caused by further dissemination of GBI sensitive trade secrets to a business competitor, Dari Farms, and JHT's insistence upon sending menacing letters to GBI customers, the resultant loss of business could be impossible to measure. *See Kroeger v. Stop & Shop Cos., Inc.*, 13 Mass. App. Ct. 310, 322 ("[T]he task of quantifying the consequences of violating a non-competition clause is a particularly difficult and elusive one").

GBI has no adequate remedy at law, but an injunction will, at least "minimize the 'harm that final relief cannot redress,' by creating or preserving, insofar as possible, a state of affairs

such that after the full trial, a meaningful decision may be rendered for either party." *Brookline v. Goldstein*, 388 Mass. 443, 447 (1980).

### D. The Balance Of Harms Tilts In GBI's Favor.

As described above, absent an injunction, GBI will suffer irreparable harm at the hands of a former business partner entrusted with great responsibility to develop an important market and tremendous access to sensitive trade secrets. *See Transkaryotic Therapies, Inc.*, 2002 WL 799694 at *3. On the other hand, there will be no hardship to JHT beyond what it already agreed to do in the Letter Agreement in exchange for significant consideration. JHT is not prohibited from working in the convenience store industry altogether – an injunction would merely foreclose JHT from using GBI's confidential information and threatening GBI customers with jail time because they have, at worst, been delayed in returning inexpensive equipment to JHT's Phoenix offices. Clearly, the balance of equities tips heavily in favor of issuing an injunction on GBI's behalf.

### E. The Public Interest Favors The Issuance Of An Injunction.

Protecting GBI's confidential and proprietary information from misappropriation by JHT comports with public policy. The protection afforded trade secrets and commercial good will by Massachusetts courts is grounded in public policy; it not only encourages and promotes commercial innovation and enterprise, but also enforces standards of commercial ethics. *See Jet Spray Cooler*, 377 Mass. at 167 ("Th[e] encouragement and protection is afforded trade secrets because the public has a manifest interest not only in commercial innovation and development, but also in the maintenance of standards of commercial ethics.") (internal quotation and punctuation marks omitted). The public interest will be promoted, furthermore, if the parties' contractual expectations are respected. *EMC Corp. v. Allen*, Super. Ct. No. 97-5972-B, 1997 WL 1366836 at *5 (Dec. 15, 1997) ("The public interest favors enforcement of contractual obligations voluntarily entered into for consideration.").

## IV.  CONCLUSION

GBI respectfully requests that the Court grant its motion for a preliminary injunction to guarantee that its confidential customer information and goodwill is adequately protected.

Respectfully Submitted,

GARBER BROS., INC.

By its attorney

*[signature]*

THE LAW OFFICE OF TERRY KLEIN
Terry Klein, BBO# 652052
1558 Dorchester Avenue, Ste. 202
Dorchester, Massachusetts  02122
Telephone: (617) 825-8175
Facsimile: (617) 507-6454

Dated: July ___, 2004

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify I have conferred with opposing counsel and have attempted in good faith to resolve or narrow the issues raised by this motion.

*[signature]*
Terry Klein

## CERTIFICATE OF SERVICE

I, Terry Klein, hereby certify that I served a copy of this document upon JH Trademark Company via Federal Express on July ___, 2004.

*[signature]*
Terry Klein