UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GARBER BROS., INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 04-11459-RCL |
| JH TRADEMARK COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

### AFFIDAVIT OF MICHAEL D'ORTENZIO

I, Michael D'Ortenzio, do hereby depose and swear as follows:

1. I am the Vice President of Marketing and Operations of the plaintiff in this action, Garber Bros, Inc. ("GBI"), and I have personal knowledge of the facts and events described in this affidavit.

A. **GBI's Letter Agreement with JHT**

2. GBI was founded as a candy and tobacco wholesaling company in 1947 by Harold and Paul Garber.

3. In the past fifty-seven years, GBI has grown into one of the top wholesale distributors in the United States and has approximately 280 employees.

4. GBI distributes candy, beverages, frozen foods, dairy and deli items, convenience store supplies, food service equipment and other general merchandise to its convenience store customers along the Eastern seaboard from Maine to Virginia.

5. GBI's growth is owed in large part to the relationship and good will that GBI has worked to develop with its convenience store customers over an almost sixty year period.

6. My understanding is that JH Trademark Company, LLC, a company based in Arizona, is the management company for Philipe's French Bread Pizza.

7. In or about the Spring of 2003, GBI and JHT began discussing an arrangement whereby GBI would distribute Philipe's branded products -- specifically, frozen pizzas -- to GBI convenience store customers.

8. As part of this arrangement, JHT also would supply GBI convenience store customers with freezer equipment in which to store the frozen pizzas and microwave ovens in which to cook them.

9. On or about June 16, 2003, Bryan Botkin of JHT delivered to GBI the Letter of Agreement between JH Trademark And Garber Bros., Inc. (the "Letter Agreement"). A true copy of the Letter Agreement is attached hereto as *Exhibit A*.

10. JHT drafted the Letter Agreement.

11. In the letter, dated June 16, 2003 (the "June 16 Letter"), that accompanied the Letter Agreement, Mr. Botkin stated that he was "glad that we have finally been able to reach an agreement that is amenable to both of our companies and I look forward to a long and prosperous relationship." A true copy of the June 16 Letter is attached hereto as *Exhibit B*.

12. The June 16 Letter directed GBI to execute a copy of the Letter Agreement and return the same to JHT, at which point JHT would sign a copy of the agreement and return that signed copy to GBI.

13. The Letter Agreement stated that: (i) it was to have a two year term beginning on July 1, 2003 and concluding on June 30, 2005; (ii) both parties had the first right of renewal and could seek a future agreement within 60 days of the Letter Agreement's expiration; (iii) information regarding the Letter Agreement was confidential between the parties; (iv) "discussion of information with or regarding customers of Garber Bros., Inc. is strictly confidential."; and (v) "[b]efore adding new distributors, [JHT] will offer [GBI] the opportunity to service the chain requesting the Philipe's Pizza program."

14. Beginning in June of 2003, in accordance with the Letter Agreement, GBI began providing JHT with confidential information regarding GBI's convenience store customers.

15. Also beginning in June of 2003, and in accordance with the terms of the Letter Agreement, JHT began the process of placing freezer and microwave equipment at GBI convenience store customer locations, if GBI convenience store customers agreed to have the equipment placed at their locations and paid JHT a nominal deposit.

16. GBI, in accordance with the Letter Agreement, purchased Philipe's frozen pizzas from JHT at a price of $12.84 per case, and sold said cases to the GBI convenience store customers who had agreed with JHT to have the freezer and microwave oven equipment at their locations at a price of $15.06 per case.

17. GBI, in accordance with the Letter Agreement, shipped the cases of Philipe's frozen pizzas to its convenience store customers who had agreed to purchase the same.

## B. JHT's Breach of the Letter Agreement

18. In 2003 and 2004 GBI purchased tens of thousands of dollars worth of frozen pizzas from JHT in anticipation of delivering said frozen pizzas to GBI convenience store customers.

19. On March 15, 2004, however, Doug Hecker of JHT informed John Poulakis of GBI that (i) JHT was terminating the Letter Agreement with GBI and; (ii) beginning on March 29, 2004, Dari Farms would begin distributing JHT products, including Philipe's frozen pizzas, in Massachusetts, Connecticut and Rhode Island. A true copy of an electronic mail message from Doug Hecker to John Poulikas, dated March 15, 2004, is attached hereto as *Exhibit C*.

20. Dari Farms distributes products and inventory to convenience stores in New England and is a competitor of GBI.

21. Nobody at GBI had any expectation that JHT would refuse to adhere to its obligations to GBI under the Letter Agreement.

22. On no occasions before March 15, 2004 did JHT either state or imply that it was dissatisfied with GBI's performance under the Letter Agreement.

23. Upon information and belief, Dari Farms is currently distributing Philipe's frozen pizzas in Massachusetts, Connecticut and Rhode Island.

24. GBI has demanded on numerous occasions since March 15, 2004 that JHT fully reimburse GBI for the cost that GBI incurred in purchasing the Philipe's frozen pizzas that were in GBI's warehouse on March 15, 2004 and had not been delivered to GBI convenience store customers.

25. JHT has refused to refund to GBI the cost of the Philipe's frozen pizzas that GBI purchased from JHT and that GBI has been storing in its warehouse.

### C. JHT's Misuse and Misappropriation of GBI's Confidential Information

26. At all times during the negotiations between JHT and GBI, and at all other times material hereto, GBI specifically stated that all information related to GBI convenience store customers was confidential, proprietary and not to be disclosed to third parties under any circumstances.

27. GBI requires all of its sales and sales management personnel to sign noncompetition and nondisclosure agreements, pursuant to which GBI's sales and management personnel promise not to disclose any information related to GBI's convenience store customers.

28. JHT has not returned the confidential customer information that it obtained from GBI pursuant to the Letter Agreement.

29. JHT's misappropriation of GBI's confidential information regarding GBI convenience store customers places at risk the good will and customer relationships that GBI has worked hard to develop over the last fifty seven years.

30. Following GBI's commencement of this suit in state court, JHT began contacting GBI customers that had been unwilling to continue doing business with JHT after it breached its contract with GBI. JHT sent threatening letters to certain GBI customers because, it is my understanding, they had not yet returned the freezers and microwave ovens that would be used to store and heat JHT's frozen pizzas. True copies of the threatening letters received by GBI customers are attached hereto as *Exhibit D*. JHT has refused to stop sending letters such as these to GBI customers even though GBI has requested that JHT stop doing so.

31.  GBI personnel have been forced to devote a substantial amount of time and effort in an attempt to repair GBI's relationships with customers that have received belligerent letters from JHT.

Duly sworn under the pains and penalties of perjury.

*[signature]*
Michael D'Ortenzio
Dated: July 27, 2004